UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **AWARDS DEPOT, LLC., a Texas Corporation** | § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. _____ |
| **TROPHY DEPOT, INC., a New York Corporation** | § § § | |
| Defendant. | § | |

## Plaintiff's Original Complaint Seeking Declaratory Judgment

Plaintiff Awards Depot, LLC ("Awards Depot" or "Plaintiff") files this Complaint against Defendant Trophy Depot, Inc. ("Trophy Depot" or "Defendant") seeking a declaratory judgment, and claims and alleges as follows:

### I.      Parties

1.     Plaintiff Awards Depot is a Texas company organized and existing under the laws of the State of Texas with its principal place of business at 2595 Waldrip Rd., Madisonville, Texas 77864. It is engaged in the business of making and selling awards primarily to markets located in the state of Texas, where all of its principals and employees are located. Plaintiff maintains a domain name, awardsdepot.com, that has been registered with the Internet Corporation of Assigned Names and Numbers ("ICANN") since November 23, 2004 with the "Registrant Organization" clearly identified as "Awards" and the "Registrant State/Province" identified as "Texas" in the publicly available WHOIS database of ICANN registrants.

2.     Defendant Trophy Depot, Inc. is a New York corporation, organized and existing under the laws of the State of New York, with its principal place of business at 171 Rodeo Drive, Edgewood, New York, 11717. Trophy Depot is engaged in the business of making and selling awards.

## II. Jurisdiction

3. The Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of a different state than Defendant and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. The Court also has federal question jurisdiction under 28 U.S.C. § 1338 because the request for declaratory judgment arises out of Defendant's assertion that Plaintiff's operation of a Texas awards company infringed one or more trademarks Defendant claims to hold over such items as the use of a diamond-shaped background in merchandise sold by each of the parties.

5. The Court has personal jurisdiction over Defendant under Texas' long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, because Defendant has engaged in acts that constitute doing business in Texas.

6. In addition to or in the alternative to this Court's personal jurisdiction over Defendant, this Court also has *in rem* jurisdiction over awardsdepot.com pursuant to 15 U.S.C. § 1125(d)(2).

## III. Venue

7. Venue is proper in this district pursuant to U.S.C.A. § 1125 because a substantial part of the events or omissions giving rise to the claim occurred here and a substantial part of the property that is the subject of this action is situated here.

## IV. Facts

*Background and Procedural History*

8. Upon information and belief, Plaintiff began engaging in the sale of awards products on or before January 1999 under the name "Awards Depot."

9. Upon information and belief, Defendant did not begin using the mark "Trophy Depot" until "at least as early as 01/00/2000" according to the service mark application for "Trophy Depot", registration no. 3,123,497. *See* **Exhibit 1.**

10. On November 23, 2004, Plaintiff registered the domain name "awardsdepot.com" with the Internet Corporation for Assigned Names and Numbers, a nonprofit organization that plays a unique international role in maintaining the interoperability of the internet through coordination of the domain name registration system, i.e. the text-based web addresses used to reach a particular site such as awardsdepot.com.[1]  *See* **Exhibit 2**. Domain registration information for Defendant's website, trophydepot.com, could not be located through use of the ICANN WHOIS search tool for reasons unknown to Plaintiff. *See* **Exhibit 3**.

11. Despite the apparent anomaly of trophydepot.com's absence from the ICANN database, upon information and belief, Defendant could have pursued resolution of any dispute over the ownership and use of awardsdepot.com through ICANN's Uniform Domain Name Dispute Resolution Policy at a significantly reduced cost compared to initiating litigation in the federal courts.

12. On or about June 6, 2015, Plaintiff filed an application with the United States Patent and Trademark Office for the mark "Awards Depot," (the "Awards Depot Application"), filed under serial no. 86654091. *See* **Exhibit 4**.

13. Subsequent to Plaintiff's filing of the Awards Depot Application, Defendant filed its own application for a number of trademarks related to its brand "Trophy Depot" and later identified these as "marks cited by oppose as basis for opposition" in an opposition to the Awards Depot Application. *See* **Exhibit 5**.

14. On July 13, 2015, Defendant commenced a trademark infringement lawsuit in the United States District Court for the Eastern District of New York against Plaintiff, asserting that venue was proper for a Texas-based business in New York even though: Plaintiff's operations are entirely located outside of New York and all product, development, sales, order processing,

---

[1] For more information on the critical role ICANN plays in maintaining the functionality of the internet, please see https://www.icann.org/resources/pages/what-2012-02-25-en.

assembly, and distribution are all performed at facilities in Madisonville, Texas; Plaintiff does not maintain any offices, mailing addresses, bank accounts, telephone listings, agents, employees, or personnel within the state of New York and has never owned any real or personal property in New York, nor is licensed to do business in New York; Plaintiff's employees have never traveled to New York for the purpose of conducting any business on behalf of Plaintiff, no contracts had ever been negotiated or entered into in the State of New York, and no relationships existed between Plaintiff and any manufacturers, distributors, or retailers located in New York. *See* **Exhibit 6**.

15. Although Plaintiff may make some nominal number of sales to customers in New York, it never intentionally reached out or targeted New York as a market with any advertisements, promotional campaigns, or any other actions intended to develop a customer base in New York.

16. Upon information and belief, Defendant has never presented any evidence that any alleged acts of infringement occurred within New York, and as such has never provided any rational basis for asserting that New York was a proper or convenient forum for the trademark lawsuit, particularly as most, if not all, evidence and witnesses necessary to establish Plaintiff's lack of infringement are located in Texas.

17. On July 24, 2015, Plaintiff filed prompt notice of Defendant's claim and tendered it to its insurance carrier on the basis that the insurer was obligated to tender a defense under the personal and advertising injury coverage provided for in the policy.

18. On August 13, 2015, Plaintiff's carrier refused to tender a defense against a claim that was, upon information and belief, completely frivolous as Defendant's claim:

   a) alleged that even though Plaintiff had been using the name "Awards Depot" since 1999 and Defendant did not report any use of the name "Trophy Depot" prior to 2000, Plaintiff had somehow infringed on Defendant's alleged trademark rights;

   b) fell well outside of any applicable statute of limitations, even if there had been some merit to the claim (which Plaintiff does not admit and the facts do not support); and

c)   is not supported by even a scintilla of probative evidence.

19.   Without the benefit of an insurer's defense (which was denied merely because Defendant's complaint alleged an intentional act of trademark infringement), Plaintiff faced the prospect of having to personally finance what would easily total at least $500,000 in litigation expenses while also potentially experiencing a substantial disruption in sales during the pendency of the litigation, which could ultimately have proved fatal for Plaintiff's small business.[2]

20.   Under grueling economic pressure and at the district court's urging, Plaintiff was compelled to entertain some form of settlement or risk losing everything, as even a victory on the merits would quite probably prove pyrrhic due to the cost of litigation and severe business disruption the litigation would naturally cause.

21.   On October 24, 2016, the parties in the trademark infringement lawsuit participated in a settlement conference held before Judge Joan M. Azrack. The parties reached an agreement (the "Settlement Agreement") that is the foundation of this request for declaratory relief in the form of the equitable remedy of rescission. *See* **Exhibit 7**.

22.   On October 24, 2016, Judge Azrack dismissed the trademark infringement with prejudice.

23.   On September 22, 2017, Defendant withdrew its opposition to the Awards Depot Application. Defendant was presented an opportunity by the United States Patent and Trademark Office to obtain consent from Plaintiff to allow for dismissal of the opposition *without prejudice*, but did not, upon information and belief, act upon this opportunity.

24.   On November 28, 2017, Defendant's opposition to the Awards Depot Application was dismissed with prejudice.

---

[2] *See* American Intellectual Property Law Association: 2015 Report of the Economic Survey at page 38, noting that the median cost of a trademark infringement suit with $1 million to $10 million at risk was reportedly $500,000 in 2015; *see also*

25. On April 3, 2018, Defendant issued correspondence to Judge Azrack requesting a settlement conference to discuss, "prior to filing suit", what Defendant falsely claims is an obligation by Plaintiff to stop using the awardsdepot.com website prior to October 24, 2017.

26. On April 16, 2018, the Court cancelled the telephone conference that had been scheduled for April 17, 2018 in order to allow the parties to attempt to resolve the alleged issues raised in Defendant's correspondence through a JAMS mediation set for May 16, 2018.

27. On May 16, 2018, the parties signed a handwritten document (the "Settlement Addendum") to the Settlement Agreement that provides, in part, that "Trophy Depot will not seek relief from the U.S. District Court of EDNY for a period of 2 months from today" and that during that time the parties would explore in "good faith the purchase of goods by [Trophy Depot] from Jerry Surber's company [Awards Depot], with the understanding that there is no obligation to agree upon any deal at all." See **Exhibit 8**.

28. The foregoing language referring to a good faith effort to pursue business opportunities between the parties is substantially similar to language in the Settlement Agreement that, as discussed *supra*, is among the core issues justifying this Court's exercise of the Texas Declaratory Judgment Act to order the equitable remedy of rescission of the Settlement Agreement and the Settlement Addendum that is, to borrow an apt phrase from criminal law, fruit of the poisonous tree.

29. On May 21, 2018, while the ink on the Settlement Addendum was still damp, Defendant rushed back to the U.S. District Court of the Eastern District of New York to file another highly contentious, inaccurate, malicious and disparaging letter to the Court requesting a settlement conference that is no doubt intended to serve as a mere formality prior to the re-initiation of litigation in a distant forum in the vain pursuit of relief to which Defendant is not entitled. See **Exhibit 9**.

*The Settlement Agreement and Settlement Addendum*

30. What has become apparent from Defendant's conduct when considered in the context of the Settlement Agreement's terms is that there was never any legitimate basis or even concern that Plaintiff's products or use of the name "Awards Depot" in any way infringed Defendant's intellectual property.

31. Instead, it appears that Defendant's true aim was to disrupt or eliminate what it perceived as a competitor in the online marketplace through the threat of economically devastating litigation.

32. Plaintiff has for many years invested in developing a website, at a cost of approximately $5 million in advertising and web-development and search-optimization software, that has allowed it to become one of the top results in response to searches for generic terms for which Defendant cannot assert any claim.

33. The very first provision in the Settlement Agreement does not even relate to the tangible goods that Defendant claims infringe its trademarks (the alleged sale of which served as the razor thin excuse for asserting jurisdiction in New York), but instead involves a timeline for winding down the operation of the awardsdepot.com website that Plaintiff has heavily invested in over the course of more than a decade.

34. The terms of the Settlement Agreement provide that in "Year 1", Plaintiff will continue to use its awardsdepot.com URL; in "Year 2", it will cease "all online and other advertising of its name AD, continuing the use of awardsdepot.com only as a 'redirect' to a new website…"; in "Year 3", "on or before **October 24, 2019**, AD shall transfer the name and URL (awardsdepot.com) to Trophy Depot) ('TD')" and in "Year 4", "from **October 24, 2019** onward, TD may use the name, "Awards Depot," and URL, awardsdepot.com, to redirect traffic to trophydepot.com.

35. A plain reading of the foregoing timeline provides that Plaintiff would have until **October 24, 2018 in** "Year 2" to terminate any online advertising and use of the awardsdepot.com website. Defendant has nevertheless in bad faith insisted that "Year 2" should be read to mean that Plaintiff must suspend all advertising and operation of its website immediately beginning on October 24, 2017. This perplexing position has been adopted despite the contract defining the term for "Year 3" as extending up through October 24, 2019, defining "Year 4" in the same manner, and the drafters of the agreement having consciously chosen *not* to use a phrase such as "on or before October 24, *2017*" to define the compliance deadline for "Year 2." Defendants misinterpretation of the Settlement Agreement can only be reached if fundamental principles of contract interpretation are willfully ignored and Defendant should be found in breach of the Settlement Agreement for insisting that Plaintiff comply prematurely with a timetable that is wholly imagined and not what is set forth in the agreement.

36. Defendant's insistence on prematurely requiring Plaintiff to terminate existing advertising agreements, over a half-year in advance of what a plain reading of the Settlement Agreement requires, accords with the reasonable interpretation that Defendant's true motive is to destroy Plaintiff's online presence and not to protect against any alleged infringement.

37. The settlement terms demanded by Defendant themselves reveal that the true primary drive behind its lawsuit was *not* to put an end to any alleged infringement, but instead to either destroy or secure ownership of a website carefully cultivated over the course of many years to develop a valuable stream web traffic, much of which is driven by the site's prominent placement in Google search results.

38. This conclusion is informed by Defendant's approval of Plaintiff's proposed name for the "NewSite" referred to in the Settlement Agreement: "Trophy Deals," which arguably (without making any such admission) could be much more readily confused with "Trophy Depot" than the name "Awards Depot."

39. Defendant's approval of a proposed name consisting of the same initials as "Trophy Deal" and a more specific reference to the same type of award does not make any sense if the true intent was to eliminate confusion, but it is more readily understood if Defendant's true goal was to eliminate a competing website and it not only succeeded in that, but extracted from Plaintiff an agreement to actually turn this valuable commerce platform over in exchange for an understanding that the business the parties would engage in together would potentially offset the loss of the website.

40. With the threat of further litigation acting as the stick, Defendant dangled the carrot of a promise of acting in good faith to pursue future business dealings in Item 12 of the Settlement Agreement.

41. However, acting under the belief that Defendant had succeeded in its use of aggressive litigation tactics to secure its true goal of eliminating awardsdepot.com as a potential online rival, Defendant did not even make a minimal effort to comply with the requirement that it explore potential business opportunities and in failing to do so breached its obligation to act in good faith.

42. Perhaps prescient that Defendant's failure to fulfil its obligations under the Settlement Agreement would be questioned, Defendant included in the terms a dispute resolution procedure that required the parties' principals to first meet *without counsel* to discuss resolution, prior to then attending confidential mediation with JAMS, and only thereafter proceeding to request the Court to intervene.

43. This insistence that Plaintiff not have the benefit of legal counsel could reasonably be interpreted as an unconscionable attempt to procure unfavorable concessions from Plaintiff, such as an agreement to prematurely terminate use of the awardsdepot.com website even in advance of what was previously agreed to.

44. However, in addition to materially breaching the requirement that Defendant act in good faith to pursue potential business opportunities, Defendant has committed several additional

material breaches that now warrant complete rescission of the Settlement Agreement and the Settlement Addendum that was procured only through the threat of engaging in additional litigation over a frivolous claim that Plaintiff had not complied with the terms of the original Settlement Agreement.

45. By way of example, the Settlement Agreement contained a confidentiality clause, which has been wholly ignored by Defendant along with the dispute resolution procedures it agreed to.

46. Despite the confidential nature of the Settlement Agreement and any conversations intended to resolve any disputes arising out of it, Defendant included references to conversations alleged to have occurred between the principals of the parties in a letter to the district court that was publicly filed.

47. Even more egregiously, this same letter included references to discussions and terms alleged to have occurred during mediation despite the near sacrosanct cover of confidentiality that applies to such proceedings.

48. In addition to violating the confidentiality provisions of the Settlement Agreement (and the confidentiality afforded as part of mediation), Defendant also violated a Non-Disclosure Agreement in Item 13 of the Settlement Agreement that prohibits the parties from disclosing any business terms or dealings between the parties, including future business plans by Plaintiff that were expressly made confidential in yet another provision, Item 15, but nonetheless were revealed in open court by Defendant's grossly abusive violation of the Settlement Agreement's terms.

49. The hostile and unfounded disparagement contained in Defendant's most recent letter to the Court is a clear violation of Item 9 of the Settlement Agreement, which prohibits disparagement.

50. For further illustration of Defendant's failure to make even a minimal, much less good faith, effort to satisfy one of the two primary impetuses (the other being avoidance of company-

killing litigation expenses) for entering into the Settlement Agreement, it should be noted that Plaintiff took immediate steps in reliance on Defendant's contractual obligations to change the name of its company, much earlier than as was required by the Settlement Agreement.

51. From October 2016 to October 2017, Plaintiff requested purchasing meetings on many occasions via telephone or in person and Defendant made no effort to coordinate even a possibility of discussing any business opportunities.

52. Plaintiff also removed the name "Awards Depot" form its website *voluntarily* and well in advance to the October 2018 deadline as agreed upon (which Defendant now incredulously asserts was actually an October 2017 deadline.)

53. Plaintiff went so far as to not only remove "Awards Depot" from all advertisements it was able to exert control over through its Adwords account with Google, but also placed "Trophy Depot" as *negative* keywords to prophylactically avoid any Awards Depot advertisements from appearing even if they might otherwise appear in a search for "Trophy Depot."

54. Nevertheless, over the course of 16 months, Defendant has made no effort to set up any calls, meetings, or request any quotes with one exception: in March 2018, Defendant requested a quote from Plaintiff's affiliated supplier that Defendant subsequently confirmed was priced lower than their alternative vendor, but nevertheless declined to further explore any business opportunities even though it acknowledged the quality of the sample was good.

55. This conduct can only be attributed to Defendant's desire to abuse the legal system in order to try to destroy a competitor and not out of any genuine intent to abide by its requirement to act in good faith to at least explore the possibility of any mutually beneficial arrangements.

56. By rushing back to the district court with the threat of imminent litigation, contrary to the dispute resolution agreements provided for in the Settlement Agreement (and the prohibition against any court involvement for two months following the execution of the Settlement Addendum),

Defendant has also vitiated the benefit Plaintiff bargained for with regards to avoiding the cost of avoiding having to defend against frivolous litigation.

## V. Prayer for Relief

57. Plaintiff prays for a declaratory judgment that:

- Defendant has materially breached the Settlement Agreement and Settlement Addendum by failing to act in good faith to explore future business dealings as required by Item 12 of the Settlement Agreement and Item 2 of the Settlement Addendum;

- Defendant has materially breached the Settlement Agreement by violating the confidentiality requirements as set forth in Item 10 of the Settlement Agreement and similarly materially breached the Non-Disclosure Agreement in Item 13 of the Settlement Agreement and has further committed a material breach by revealing Plaintiffs' future business plans in violation of Item 15 of the Settlement Agreement;

- Defendant has materially breached the Settlement Agreement by violating the non-disparagement clause in Item 9 of the Settlement Agreement;

- Defendant has materially breached the Settlement Agreement by failing to abide by the terms of the dispute resolution procedures as set forth in Item 7;

- Defendant has materially breached the Settlement Addendum by seeking relief from the district court less than two months after the agreement was signed.

58. Plaintiff further requests that this Court order the equitable remedy of rescission and such further relief as necessary, whether monetary or in the alternative, to place the parties back into the same position as if the Settlement Agreement and Settlement Addendum had never been executed.

59. Plaintiff expressly requests that the relief included under the equitable remedy of rescission include an express finding that Plaintiff is the owner of awardsdepot.com, that there is no valid assignment of any trademark or other intellectual property owned by Plaintiff to Defendant pursuant to the Settlement Agreement and that Plaintiff is excused from performing any alleged obligations under the Settlement Agreement and Settlement Addendum.

60. Plaintiff also seeks to recovery such attorneys' fees as are reasonable and necessary pursuant to the Texas Declaratory Judgment Act.

          Respectfully submitted,

          ZIMMERMAN, AXELRAD,
          MEYER, STERN & WISE, P.C.

                //s// Leonard J. Meyer
By:    _____
          Leonard J. Meyer
          State Bar No. 13993750
          Colin L. Guy
          State Bar No. 24083118
          3040 Post Oak Boulevard, Suite 1300
          Houston, Texas 77056-6560
          Telephone: (713) 552-1234
          Facsimile:  (713) 212-2740
          Email: lmeyer@zimmerlaw.com
          Email: cguy@zimmerlaw.com

ATTORNEYS FOR PLAINTIFF