**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AWARDS DEPOT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1838 |
| | § | |
| TROPHY DEPOT, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING MOTION TO TRANSFER**

In 2015, Trophy Depot, LLC sued Awards Depot, LLC in the Eastern District of New York. Although the parties reached a settlement in October 2016, their dispute did not end. In June, Awards Depot sued Trophy Depot in this district for an alleged breach of that settlement agreement. (Docket Entry No. 1). Trophy Depot moved to dismiss and to transfer venue to the Eastern District of New York. (Docket Entry Nos. 8, 11-12). Awards Depot amended its complaint, and Trophy Depot moved to dismiss again. (Docket Nos. 15, 23). Awards Depot res ponded to the motions to dismiss and to transfer venue. (Docket Entry Nos. 16-17). The court found the motions moot and granted Trophy Depot's motion to strike Awards Depot's response to those motions. (Docket Entry No. 21). Trophy Depot again moved to dismiss and to transfer venue. (Docket Entry Nos. 23–25). After concluding that the settlement agreement's venue and jurisdiction clause is not mandatory, the court ordered the parties to file supplemental briefing on the § 1404(a) factors. (Docket Entry Nos. 28–29). Based on the pleadings, the motions and responses, the parties' submissions, and the applicable law, the motion to transfer venue is denied. The reasons are set out in detail below.

**I.      Background**

Both parties sell trophies and awards. Trophy Depot's 2015 suit against Awards Depot in

the Eastern District of New York included willful trademark infringement claims. In October 2016, the parties signed a settlement agreement in front of Judge Azrack, requiring Trophy Depot to dismiss its case with prejudice and Awards Depot to progressively stop using the "Awards Depot" name and relinquish the "awardsdepot.com" domain name to Trophy Depot. The Agreement contemplated that Trophy Depot would gradually stop using the name over a four-year period. The Agreement also required the parties "to work together in good faith and to continue to discuss mutually beneficial business opportunities for so long as it is in their mutual interest to do so," and stated that "[f]or any dispute arising out of related to this agreement, the parties agree to jurisdiction and venue in state and federal courts of New York, applying New York substantive law." (Docket Entry No. 1-7 at 2).

In 2018, a dispute arose. Trophy Depot claimed that Awards Depot had breached the requirement to stop using its domain name for anything beyond redirecting visitors. (Docket Entry No. 31 at 8). Trophy Depot requested a conference with Judge Azrack, who ordered the parties to mediation. (*Id.*). The mediation resulted in the April 2018 Addendum to the Agreement, requiring Awards Depot to "cease within 24 hours of the execution of the [2018 addendum] all use of Awards Depot in connection with all paid online search, social advertising, all matters of internet advertising, including mobile, and email blasts." (Docket Entry No. 1-8 at 3).

Trophy Depot sent another letter to Judge Azrack in May 2018, alleging that Awards Depot was continuing to use online advertising, violating the Addendum. (Docket Entry No. 31 at 8–9). Before a scheduled conference with Judge Azrack could occur, Awards Depot sued Trophy Depot in this district. (Docket Entry No. 1).

Awards Depot alleges that Trophy Depot materially breached the Agreement and Addendum. Awards Depot seeks rescission and a declaratory judgment that it is the present owner of the domain

name "awardsdepot.com" and is not required to turn over that domain name to Trophy Depot. Awards Depot also alleges that Trophy Depot was unjustly enriched through the Agreements and seeks just compensation. Should the court determine that rescission is not warranted, Awards Depot seeks damages and attorneys' fees under Texas law.

## II.    The Legal Standard

Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

Section 1404(a) allows a court "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)). A motion to transfer under 28 U.S.C. § 1404(a) is appropriate when venue is proper in the transferor court under 28 U.S.C. § 1391, but "[f]or the convenience of parties and witnesses, in the interest of justice," transfer is sought to another "district or division where it might have been brought." *Id.* § 1404(a). "[T]he purpose of [§ 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted). "In exercising that discretion, courts are to examine a collection of private and public factors." *Cooper Lighting, LLC v. Kumar*, 2013 WL 5775687, at *9 (S.D. Tex. Oct. 25, 2013). The party seeking transfer has the burden of satisfying the § 1404(a) factors. *In re Volkswagen*, 545 F.3d at 315.

*In re Volkswagen* explained the § 1404(a) test:

The private interest factors are: "(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*Id.* at 315 (citations omitted).

The decision to transfer a pending case is committed to the sound discretion of the district court. *See Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1998); *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1106 (S.D. Tex. 1997). The party moving for a change of venue bears the burden of demonstrating why the forum should be changed. *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *Dearing v. Sigma Chem. Co.*, 1 F. Supp. 2d 660 (S.D. Tex. 1998). "Unless the balance of factors strongly favors the moving party, the Plaintiff's choice of forum should generally not be disturbed." *Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1065 (S.D. Tex. 1996); *see also Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

## III.    Analysis

### A.    The Private Interest Factors

The location of documents does not weigh in favor of transfer. Trophy Depot argues that "documents addressing every topic possibly at issue in this case," including documents about Award Depot's alleged breach of the Agreement and Addendum, the parties' subsequent communications about and understandings of the agreements, and Trophy Depot's alleged compliance with the agreements, "are stored in [Trophy Depot's] office in the Eastern District of New York." (Docket Entry No. 31 at 15). Trophy Depot also argues that Awards Depot will likely have to travel to New York regardless if Trophy Depot "elects to respond to [Award Depot's] anticipated requests for production by making the documents available for inspection and copying as they are kept in the

usual course of business." (*Id.*).

Awards Depot argues that the relevant physical evidence is located in Texas because "[t]he finder of fact may question why [Trophy Depot's] spurious [infringement] claim was brought and why it was settled" such that it would be necessary to show them Awards Depot's product line. (Docket Entry No. 34 at 6). Because both parties argue that helpful physical evidence is in their preferred venue and neither explains with particularity why that evidence is necessary—rather than simply helpful—this factor does not weigh in favor of transfer.

The ability to secure the attendance of witnesses "is arguably the most important of the factors listed." *LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998). "The convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Id.* at 1060. "[T]he moving party must offer more than mere allegations that certain key witnesses are not available or are inconveniently located. Instead, the movant must specifically identify the key witnesses and outline their testimony." *Id.* (citation omitted).

The location of nonparty fact witnesses is the primary consideration in assessing this factor.[1] The only identified nonparty witness for Trophy Depot is a former employee who lives and works in New York. Trophy Depot explains that although it expects the former employee's testimony to "support [its] position in this action," the former employee "has refused to provide a declaration in support of this motion." (*Id.* at 12 n.14). Trophy Depot argues that this "suggests that, ultimately,

---

[1] Trophy Depot also identifies a party witness, James O'Boyle, the company's president, as a key witness who would be inconvenienced if the Southern District of Texas were to retain the case. O'Boyle resides in New York, and Trophy Depot anticipates that he "will be called to testify about every contested fact in this lawsuit." But when the "key witnesses are . . . employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial." *Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992); *see LaBouef*, 20 F. Supp. 2d at 1060 ("[W]here these anticipated witnesses are employees of the party seeking transfer, the sympathy of this Court is forfeited.").

it may be necessary for [Trophy Depot] to subpoena his involvement at deposition and/or trial." (*Id.*). Because a New York-based witness is outside the subpoena power of this court, Trophy Depot argues that a decision not to transfer "threatens to deprive [Trophy Depot] of its access to [a] critical, key witness." (*Id.*). But the burden is on the party seeking the venue transfer, and the information Trophy Depot has supplied as to the former employee's role in the case does not explain why he is a critical nonparty witness.

Awards Depot argues that "there are at least nine independent contractors who may become necessary witnesses on short notice to explain any number of technical issues pertaining to the awards industry and online commerce." (Docket Entry No. 34 at 6). Like Trophy Depot, Awards Depot does not specify who these nonparty witnesses are. Because the case is essentially a contract dispute, it is also unclear how likely it is that numerous witnesses would be needed to testify as to the particularities of the trophy industry. Because neither party identifies with any specificity the nonparty fact witnesses necessary to their case, this factor weighs against transfer.

Trophy Depot argues that it would be costly to make its witnesses available to testify in Houston. Awards Depot responds that it would be costly to make its witnesses testify in New York. Undoubtedly, Awards Depot's litigation expenses would be reduced if this court retained the case, and Trophy Depot's would be reduced if this court transferred it. Because transfer would only shift the burden, this factor weighs against transfer.

The final private factor—all other practical problems that affect whether trial is expeditious and inexpensive—weighs slightly in favor of transferring the case to New York. Trophy Depot argues that "[p]ractical problems include those that are rationally based on judicial economy," and that the parties have an extensive litigation history in the Eastern District of New York supports transfer to that court. (Docket Entry No. 31 at 13 (quoting *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No.

6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x 295 (Fed. Cir. 2011))). Trophy Depot's letter to Judge Azrack of the Eastern District of New York precipitated this litigation, and the parties have spent years litigating the underlying intellectual-property dispute in that district. The Agreement between Trophy Depot and Awards Depot has a forum-selection clause that identifies the Eastern District of New York as a suitable forum. Although this clause is not a mandatory forum-selection clause, it is an indication that Awards Depot, a Texas company, views venue in the Eastern District of New York as a presumptively convenient and proper forum in which to litigate disputes arising disputes related to the Agreement. Because that district is not only familiar with these parties' history but also with the Agreement and Addendum at the heart of the current dispute, the most expeditious and efficient path is to allow the Eastern District of New York to resolve this lawsuit.

Awards Depot argues against this characterization. Awards Depot points to Judge Azrack's response to Trophy Depot's letter, which stated simply that the "June 5, 2018 telephone settlement conference statisfie[d]" the Agreement's requirement that the parties "seek a further conference before . . . Judge Joan M. Azrack" if they "are unable to resolve their differences." (Docket Entry No. 34-2). Judge Azrack noted in her order that "[t]he Court will not hold any further settlement conferences with the parties" in connection with that provision of their Agreement. Because there is support for the conclusion that the Eastern District of New York does not have further interest in hearing disputes related to the case, this factor weighs slightly against transfer.

Taken together, the private-interest factors weigh slightly against transfer to the Eastern District of New York.

### B. The Public Interest Factors

The public interest factors relevant to the § 1404(a) analysis concern the societal interest in

the fair and efficient administration of justice. Conservation of judicial resources is a primary consideration. This factor favors transfer of venue if transfer would enable different cases involving the same parties or issues to be heard in a single forum. *See Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [section] 1404(a) was designed to prevent."); *Andrade v. Chojnacki*, 934 F.Supp. 817, 834 (S.D. Tex. 1996) (holding that transfer was favored where it would avoid duplicative litigation); *Brock v. Entre Comput.Ctrs, Inc.*, 740 F. Supp. 428, 432 (E.D. Tex. 1990) (holding that the interests of justice favored transfer where prospective transferee court had previously adjudicated cases involving the same defendant and similar issues).

The parties debate whether the Eastern District of New York or this district has greater court congestion. Trophy Depot focuses on the number of cases filed in the two districts, arguing that because the Eastern District of New York has fewer cases, it would be more efficient for the parties to have the case heard there. (Docket Entry No. 31 at 20–21). Awards Depot argues that the correct measure is the median time to trial. (Docket Entry No. 34 at 13 (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 771 (E.D. Tex. 2000))). By that measure, the Southern District of Texas is less congested. (*Id.* at 14 ("[T]he median time to trial for civil cases in the Eastern District of New York was 33.5 months for the period ending in June 2018 versus 20.4 months in the Southern District of Texas.")). Because the measure most commonly used for comparing court congestion—median time to trial, as Awards Depot argues—shows shorter times for the Southern District of Texas, this factor weighs slightly against transfer.

The second factor—the local interest in having localized interests decided at home—favors neither party. Trophy Depot argues that because the Agreement and Addendum were drafted and

signed in New York, it has a stronger interest in serving as the venue for this latest iteration of the parties' dispute.  (Docket Entry No. 31 at 21).  Awards Depot argues that "[t]here is nothing special about the disputed settlement agreement that requires it to be reviewed in New York to discern its meaning.  Nor will it have any impact on anyone in New York other than [Trophy Depot]."  (Docket Entry No. 34 at 10).  Awards Depot contends that Texas has a considerable interest because the "dispute directly involves the continued operations and viability of a business located in Texas that creates jobs for Texas residents."  (*Id.*).  Awards Depot's argument should cut both ways: New York may have an interest in protecting a New York business.  Because both states have roughly the same interest in this litigation, this factor does not favor either party.

The third and fourth factors, the familiarity of the forum with the law that will govern this state and avoidance of conflict of laws problems, do not favor transfer.  This court is capable of applying New York law to this contract dispute, and this case does not implicate foreign law.

Taken together, the public-interest factors weigh slightly against transfer to the Eastern District of New York.

## IV.   Conclusion

Both the private- and public-interest factors weigh slightly against transfer.  The motion to transfer venue to the Eastern District of New York is denied.

SIGNED on October 26, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge